Good morning, Your Honors. Matt Campbell from the Federal Defenders on behalf of Mr. Diaz-Garcia. I'm going to attempt to reserve three minutes for rebuttal. And we'd like to focus essentially on the third issue that was briefed regarding whether the sentencing judge engaged in improper fact-finding by relying on his own experiences to reject the conclusions set forth in Mr. Diaz-Garcia's expert psychological report. In essence, the district judge relied on his own personal experience to discredit conclusions drawn by Mr. Diaz-Garcia's psychological expert. He relied on his own personal experiences with brain injury cases as well as the DSM to discredit Mr. Diaz-Garcia's expert reports. The judge had stated that a traumatic brain injury should have resulted in a diagnosis of organic brain syndrome, not cognitive disorder otherwise specified, which was the diagnosis reached by the report. This fact-finding process was erroneous. It is well established that judges cannot be witnesses in their own proceedings and should not make factual findings based on their own personal experiences. The district judge's failure to abide by this limitation was prejudicial.  Certainly, Your Honor. I would say essentially for two major reasons. First off, it was simply inaccurate. Contrary to what's stated by the court, there is no listing for organic brain syndrome in the DSM-IV or the DSM-IV-R, which is actually the current version. And as explained in the DSM-IV and DSM-IV-R, it states the term organic mental disorder is no longer used in the DSM-IV because it incorrectly implies that non-organic mental disorders do not have a biological basis. And that has been recognized by the psychiatric communities being incorrect. So they've recategorized organic mental disorders into various groups, including cognitive disorder not otherwise specified, which is precisely what was stated in the psychological report. So the psychological report was accurate. The district judge was not. And that's clearly recognized in the DSM-IV. Okay. That's the mistake part. The question is prejudice. Certainly. We believe that this was actually a closed case. The presence of a mental impairment is a well-recognized mitigating circumstance, and the sentencing guidelines state that themselves. In this case, it's instructive that the probation officer who authored the PSR actually recommended that the sentence be below the guideline range. And I believe that's at the PSR at page 17. The government itself only recommended a low-end guideline sentence. And I think we also have to look at, and this is one area that we disagree with the government on, the government characterizes this as a brief reference of little import. I think if we look at the transcript, it actually shows that it was an important issue. Specifically, I believe it's at excerpt page 45, the district court had made a statement that no psychological-type reports had been authored. And trial counsel corrected the court at page 46 and said, no, that there was a report that was authored. The district court wasn't sure whether it had read it, took a recess, read it, and then there's immediately this discussion that goes on. And that discussion goes on for several pages, beginning at excerpt page 47, where the court lists its understanding of the circumstances, its understanding of the DSM-IV, and ultimately gives it essentially no weight, no consideration, based on the district court's conclusion that the psychological expert was wrong. As we stated, that was incorrect. The psychological expert was correct. Now, here's a question. It seems to me that the district judge, a very good district judge, we are very familiar with his work, just made a mistake. Absolutely. I'm not sure it fits very well into a prohibition about judges testifying. It fits more readily, if I don't have to do legal categories, into the judge just made a mistake. And what do we do if the judge made a mistake of fact in sentencing? Do we have the authority to send it back to have the district judge simply have another look at it with the mistake of fact corrected? Certainly, Your Honor. And respectfully, we would disagree. We do believe that this amounted to essentially acting as a witness. I know you do, but I'm not sure I agree with that. So my question is, I'm quite convinced that the district judge made a mistake. I'm not sure whether it made a difference to his decision. And do we have the authority to send it back and say, would you just have another look at that? Well, I think we do if we look at some of the cases that we've cited regarding certainly the need to explain, the need for a district judge to explain his decision. And essentially, again, we've gone through three or four pages that I've just cited where the district judge, I would say, is explaining his decision. I do not give credence to this issue because, in my opinion, the correct diagnosis would be organic brain syndrome. That's on the record. That's the explanation as to why the court is not giving credit to the defense evidence. Clearly, under Gall, Rita, this was not a frivolous argument, so the district court was required to explain it. The district court explained it, and it explained it in an erroneous manner, what its decision was. So essentially, the argument was either rejected erroneously as the explanation, or there is no explanation that's standing because the one given is not valid. I would also point the court. So in a way, this is just, this turns it into a fairly ordinary 3553. You've got to explain the rate basis for your sentence. I think that's certainly a way to look at it. And I think that the recent decision in Rassam, which we cited to the Westlaw site, had stated that a decision is not based on sound reason if it's premised on clearly erroneous facts. He used the wrong word, but as I understood organic brain syndrome, it was a word that was gotten rid of because it was too all-encompassing. In other words, that's how they changed it. But that does not eliminate the possibility that he would have included the definition in the report. In other words, they're not necessarily conflicting. He just used an old term to describe it. Well, I guess that would be one means of interpreting it. But I think, again, if we go back to the transcripts, the district court essentially rejected the, if the district court has said, for example, I considered the report, I believe that the proper term might have been this, but I'll give the report the benefit of the doubt. However, I don't find it persuasive in light, I don't find that it makes any difference in light of the serious crimes that he committed, the number of times he had been back. In other words, if the district court had said, I take the report, I've considered it, I would have written it slightly differently, then that might be a different case because then the court is essentially waiting. Can you point us in the sentencing transcript where you think the most cogent evidence of how it influenced his judgment? Certainly. I think if we look at excerpt page 48 at the top where he begins a paragraph and the only noted notations in the file are work-related. He characterized it as a brain injury, and it does show a bit different, goes through what he believes a brain injury should properly be shown. Ms. Guernsey says that, talks about what she believes the report shows. The court says that's what he said, and I find that not particularly documented in the file. He's entitled to his view. He was attempting to help. And then he talks about what happened. On the next page, page 49, he says, and my belief is that the DSM-IV, if that's the correct current volume, would have, in fact, an organic brain syndrome rather than simply a cognitive disorder. And he goes on at length, and I believe that on those two pages he is essentially saying, I disagree with this person's diagnosis. And at the end of his discussion right there, he says, essentially, okay, I've reviewed it. He also takes note that the MMPI was invalid, which, again, seems like another sort of testifying issue. Well, no, that's true. It's just in the report. The results of the test were invalid. Right. But what that means, again, if I were arguing this case, if I were making these sorts of observations without an expert report, I think that Judge Shea would clearly tell me, counsel, you need an expert. I'd like to reserve the last 45 seconds, if I can. Good morning, and may it please the Court. My name is Allison Gregoire, and I represent the United States in this matter. Given the argument that the Court has heard, I do plan to focus my comments on issue number three, assignment of error three. I trust that the Court will redirect me, if that's not what the Court wishes to hear. The government begins with its assertion that the judge did not violate, I'm sorry, Your Honor. No, no. Did not violate Federal Rule of Evidence 605, which dictates that a presiding judge may not testify as a witness at the trial. He did not violate that rule, nor did he exceed the bounds of his discretion at sentencing. When the Court considered Dr. Judd's report, psychologist's report offered by the defense, explained his concerns about the report, then asked the defense counsel if there was anything further, and having already conducted a full analysis of the 3553A factors, imposed sentence at the very bottom of the guideline. The government asserts that Rule 605 is not the proper point of analysis. I'm with you on that point. I'm not consulting with my colleagues, so I don't know whether they are. But my concern is, well, it looks to me as though he made a mistake. He doesn't understand the change in terminology. He doesn't understand that the terminology now used in this report may in fact be terminology referring to what had previously been called organic brain damage. That is to say, there's something in his head that is wrong, that has some serious influence on his behavior, meaning, roughly speaking, beyond his ability to control. Therefore, the old term of organic brain damage, that was a basis upon which a district judge could have some leniency. Not necessarily required to, but could. So, as I read it, he said, well, this is not organic brain damage. Therefore, it's not something over which he had no control. Therefore, I'm not going to give him leniency based on this. Well, he doesn't understand the vocabulary anymore. And he goes through the type of injury that's described when he got hit in the head, when the backhoe knocks over the pole, and the pole hits him in the head. He takes a couple of days off of work. He comes back to work, still has headaches. He doesn't talk about the pesticide, which is also in the report, supporting the notion that there's something wrong with his mental functioning. But my concern is, it's possible that if the district judge believed that what he was reading in the report was telling him there are brain problems here that result in behaviors over which he has little or no control, that the district judge might have sentenced differently. For example, might have sentenced in accordance with the probation officer's recommendation. That's my problem. What am I supposed to do with that? Yes, Your Honor. The government agrees with you insofar as the judge ought not to have mentioned organic brain syndrome. I don't care what he mentioned or not. He made a mistake. Right. Insofar as the language is concerned, Your Honor, the government agrees he made a mistake. Insofar as his analysis, that's why the government does not agree he made a mistake. Because when you look to what the judge actually said, he is questioning the – Let's stay with the transcript. Right. Yes. I'm referring, Your Honor, to transcript. If you look to excerpts of record, this entire conversation is contained at 47, 48, and 49. I've got it in front of me. Right. And when you look to excerpt of record 48, that's where the judge is talking about what the psychologist in this case actually found. And he seems to be concerned with the leap that the psychologist is making given the findings in the report. Specifically, he notes that the notations in the file, he characterizes brain injury, but it shows different. Mild closed-head injury, skull series is negative, so two days off of work. That's what the judge is referencing. He's correct. That is in the report, but he's also leaving out the pesticide, which is part of the report, which is part of the basis for the conclusion that we have some mental functioning problems. Right, Your Honor. But when you look to, I would refer to SER 114, which is in the report, the psychologist notes, Mr. Diaz-Garcia had a documented mild traumatic brain injury on 6-3-86, his history in testing, and it goes forward to explain how the traumatic brain injury on that date, Your Honor, the traumatic brain injury on that date is what caused the rigidity of thinking, et cetera, all the points that the defense counsel brought out. I read the report. Give me the citation again so I can pick it up. If you look to SER 114. Okay. Hang on a second. SER 114. Judge Fischer is going to laugh at me because he thinks I'm slower getting into these things. He's right. Okay, okay. I'm sorry. You might just have to read it to me. I read this yesterday, and my recollection is that pesticide exposure contributes to the diagnosis of rigidity in thinking. Your Honor, yes. Well, there's a document. He does talk about the pesticides. He talks about the pesticides, though, in saying that those increase defendant's anxiety. And when talking about the brain injury, he notes. Sorry. We're looking for the psychological report? You're saying it's in SER? It's in the SER, page 114. ER 102 to 135? Right.  Oh, I have it down. It's in the sealed portion. I apologize, Your Honor. At the bottom, I believe the annotation is to SER. Oh, I do have that. Okay. I apologize. Okay. So what page are you on? 114. 114. And I'm at. This is in conclusion? Exactly, Your Honor. Yes. Are you there yet, Judge? Yeah, I'm there. Oh, good. We had a tie. iPad versus paper. We're having a contest. I am the horse, and he's the iron horse, and we're racing, and the iron horse sometimes wins. At that point, under conclusions, the expert notes that Mr. Diaz-Garcia had a documented mild traumatic brain injury on 6-3-1986, and then if you look in that paragraph, that is where the doctor notes that there is rigidity of thinking, excuse me, impairments in social perception, problem solving, and rigidity of thinking as a consequence of that injury. So he's referring to the injury that occurred on that date, and that's where the district court judge is saying, I'm looking to the injury on that date, which is reflected on SER page 103, and it talks about a mild closed head injury, a negative skull series, and back to work in a couple of days. And so that's where when the trial defense counsel says, Judge, he diagnosed all these things, the district court judge quite rightly responds, that is what he said, and I'm at excerpt of Record 48. That is what he said, and I find that not particularly documented in the file. And now let's read the next paragraph. He had documented organophosphate pesticide poisoning in 1988. The organic phosphates are known from human and animal studies to induce persisting anxiety disorder through permanent alteration of the anxiety circuits of the brain. That's correct, Your Honor. So he's got another brain problem. Right. And that's the anxiety portion. But I do think that the district court judge was talking about the ability of the psychologist to diagnose a traumatic brain injury based off of the findings that occurred on that date in 19... But the problem is not just injury. It's organic brain syndrome. That's correct. Or problems with the brain functioning. Right. And, Your Honor, inarguably, the district court judge was wrong in trying to name this. But my point is that he was well within the bounds of his discretion to look at what the psychologist was pulling from and explain his concerns with what the psychologist worked. My problem, this is a hard case for me for the reason pinpointed earlier by Judge Fisher's question. He made a mistake. The question is whether it's enough of a mistake to send it back and ask them to have another look. Yes, Your Honor. To that end, the government argues that this should be reviewed for plain error. There was no objection at trial. The government doesn't believe that this is a 605 error. And, in fact, 605, the defense did not give this court a case where 605 was applied in a sentencing context. So reviewing this for plain error and looking to the ALANA standard, the government argues it's not met in this case. Specifically, this error was definitely harmless. This is a matter, and it's important that this court recognize, this psychologist's report was not prepared for this case. It was prepared for defendant's underlying murder case, and it was handed to trial defense counsel by trial defense counsel in the murder case. And so this was a matter that was submitted in mitigation amongst many other matters that were argued by trial defense counsel to try to move the ball a bit further to their side. Judge Shea did not attach much weight to this testimony. That much, I think, is clear. But that's within his discretion. So if there was error, it was definitely harmless error, as this was one of many arguments that was advanced. Additionally, Judge Shea considered various factors in going through the 3553A factors. He specifically noted that defendant had a GED, that he had family in the area, that he'd been in the United States a long time. He reviewed the pre-sentence report, which noted that defendant had been a previous drug trafficking convict, received a 120-month sentence, was deported, returned, was deported, returned. And then ultimately, he notes, you have a wife and a daughter, and you killed your daughter's grandmother. It's against that backdrop that Judge Shea imposes the sentence at the bottom of the guideline. So the government argues if there was error, it was certainly harmless in this case. Or not plain. Or not plain, yes, in any event. I see my time has left. Is there any further questions from the Court? Thank you. Thank you. I think that the, just the length of the discussion that we've just had. Can I short-circuit? Absolutely. Is this plain error review? We don't believe it is, Your Honor. I don't see an objection. I mean, if you look at the report, he looks at the report, he says what he says, and then they move on. I think that's correct, Your Honor. But we do believe this is a 605 case. We've cited several cases that use Rule 605 in the context of suppression hearings. And I think that this is an analogous situation. But that still makes it plain error. Under Rule 605, it says no objection need be made. Oh, I see. Okay. So if Rule 605 applies, it is not a plain error case. Yeah, but if I don't think it does, then you've got plain error. I'd have to concede. If Rule 605 doesn't apply, then there would be plain error. And as usual, when we're questioning, we're not speaking for the Court. We're speaking for ourselves. Understood. Although we would then cite to the war case, which did talk about how even in a plain error context, this could be an error. I see that my time has run out, so unless there are any questions, I thank you. Thank you. Nice arguments. Thank both of you. The United States v. Diaz-Garcia now submitted for decision.
judges: Quist, Fletcher, Fisher